UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-20778-CIV-GOLD/McALILEY

TARENCE ROBINSON,

       Plaintiff,

v.

ALUTIIQ-MELE, LLC.,

       Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT; CANCELLING ORAL ARGUMENT; CLOSING CASE

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment [DE 36] on the sole count of Plaintiff's Second Amended Complaint for Unlawful Race Discrimination. Although the count arises under the Florida Civil Rights Act ("FCRA"), this Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on the parties' diversity of citizenship. The parties have filed a Response and Reply, as well as summary judgment evidence in support of their arguments. Having reviewed Motion and related pleadings, the relevant parts of the record and applicable law, I conclude that oral argument is not necessary, and that summary judgment should be entered for Defendant Alutiiq-Mele, LLC ("Defendant" or "Alutiiq").

### I.    Factual Background

Defendant filed a Statement of Material Facts [DE 37], as well as deposition transcripts, affidavits and exhibits in support of its motion for summary judgment. In turn, Plaintiff incorporated to his Response in Opposition to Defendant's Motion for Summary Judgment [DE 40], his Statement of the Material Facts as to which he contends there

exists a genuine issue to be tried.[1] Pursuant to Local Rule 7.5, "[a]ll material facts set forth in the movant's statement...[are] deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record."

"Conclusory allegations without specific supporting facts have no probative value." *McKenzie v. Citation Corp.*, No. 05-0138, 2007 WL 1424555, *6 (S.D. Ala. May 11, 2007) (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)). In a discrimination case, conclusory statements of the declarant's feelings or opinions may be offered to show the person's subjective belief that discrimination was occurring but may not be used to demonstrate that the plaintiff was actually being discriminated. *Id.* Material that is redundant, immaterial, impertinent or scandalous is also stricken from the record. *Id.* at 8. Finally, hearsay statements, even if stated in an affidavit or deposition, cannot be considered on a motion for summary judgment. *See Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."); *Robinson v. LaFarge N. Am., Inc.*, 240 Fed. Appx. 824, 829 (11th Cir. 2007) (stating that inadmissible hearsay is not considered probative evidence) (citing *Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1455-57 (11th Cir. 1997)). Having reviewed the record under these principles, I find the following relevant facts to be undisputed and supported by evidence in the record.

---

[1] I will treat Plaintiff's incorporated statement as his attempt to comply with S.D. Fla. L.R. 7.5.

A.     The Parties

Plaintiff Tarence Robinson ("Plaintiff" or "Robinson") is a Black male. Defendant Alutiiq, an Alaskan Corporation, contracts with the federal government to provide armed security services at numerous locations in Miami-Dade County, Florida and elsewhere. (Statement of Undisputed Facts, DE 37 at ¶ 1). Alutiiq became the prime contractor with the Federal Protective Service ("FPS") for Contract No. HSCEE4-05-C-FO006 in November 2004. (Id. at ¶ 2). Pursuant to that contract, Alutiiq provides access control operations at major federal buildings and vulnerable areas, including security services for the Drug Enforcement Agency ("DEA") at its locations in Miami, Florida. (Id.). Alutiiq implements numerous checks and balances to ensure the guards are alert and compliant; one of these measures is provided through the Quality Control ("QC") team. (Id. at ¶ 3).

The QC team conducts scheduled and unscheduled inspections on Alutiiq's contracts from West Palm Beach to Key West, Florida, to guarantee Alutiiq's supervisory and non-supervisory personnel are providing quality performance. (Id. at ¶ 4). QC officers use established checklists to measure performance and prepare written reports of the inspections. (Id. at ¶ 5). QC officers are expected to advise management of anything that could impact Alutiiq's contracts with the federal government. (Id.). As such, QC inspections cover numerous things, including equipment, uniforms, appearance, attendance, procedures, adherence to duty book requirements and screening equipment procedures, certification cards and licenses.[2] (Id. at ¶ 6).

---

2

According to Defendant, when Alutiiq took over the FPS contract in late 2004, it found that there were many cliques among security officers. (Id. at ¶ 7). Thus, it decided to hire its QC officers from outside the contract to ensure QC officers did not provide preferential

B.   Plaintiff's Employment with Alutiiq

Robinson was hired by Alutiiq as a Security Officer when Alutiiq took over the FPS contract in November 2004. (*Id.* at ¶ 8). In Spring 2005, two Hispanic supervisors, Officers Ares and Martinez, approached Plaintiff to ask whether he was interested in being a supervisor. (*Id.* at ¶ 9). Subsequently, the Contract Manager, Nelson Meneses, Hispanic, interviewed Plaintiff for the position of supervisor at the DEA warehouse. (*Id.* at ¶ 10). Meneses promoted Plaintiff to the Supervisor Site position in April 2005. (*Id.*). On a letter dated April 6, 2005, from Meneses to Robinson, Defendant confirmed Robinson's promotion to Site Supervisor. (*See* Meneses Letter dated 4/6/05, DE 39-4). In the letter, Robinson was advised that he "will also be placed on a one year probation period which will expire on April 6, 2006." (*Id.*).

On or about June 1, 2005, two Hispanic QC officers, Ricardo Figueroa and Jorge Fernandez, visited the DEA warehouse to inspect Plaintiff's post. (Statement of Undisputed Facts, DE 37 at ¶ 11). After conducting the inspection, QC Officer Fernandez submitted a memorandum concerning Plaintiff's "lack of professionalism." (*Id.* at ¶ 12). In his memorandum, Officer Fernandez noted that during the inspection, Plaintiff "complain[ed] and stated that he doesn't need to be checked because he is a supervisor and that he turns in his own reports to the office. He said, 'You are wasting your time. I

---

treatment to friends. (*Id.*). Two Hispanic individuals, Ricardo Figueroa and Jorge Fernandez, were hired as QC officers directly from a class of new hires in February 2005 so that they had no connection with other employees currently on the contract. (*Id.*). Plaintiff disputes these facts. Putting aside the issue as to whether Plaintiff has presented *admissible* and proper evidence to dispute these statements, these facts merely provide background information and have no bearing on Plaintiff's demotion. Since these facts are not material to resolution of Plaintiff's claims, a dispute as to them does not preclude the entry of summary judgment.

am not singing anything. You can tell them at the office what I said. I don't have a problem with it, or I can just tell them myself." (*Id.*). Officer Fernandez reported that they advised Plaintiff that QC officers inspect everyone, including supervisory and non-supervisory personnel.[3] (*Id.*). The memorandum further noted that in the warehouse Plaintiff was "very sarcastic and he continued to complain about [the QC's] presence," and "did not cooperate at all." (*Id.* at ¶ 13). The QC Officer concluded that Plaintiff "should be reconsidered for holding a position as a supervisor." (*Id.*). A copy of the memorandum was given to Capt. Villareal, Mr. Meneses, and Oscar Perez. On the "re:" field, Fernandez wrote: "Sgt. Robinson (Lack of Professionalism")." (*See* Fernandez Memo dated 6/1/05, DE 39-4).

Plaintiff admits that supervisors are required to write up or discipline subordinates who don't follow directions or are rude. (*Id.* at ¶ 14; Pl. Dep. at 76). Plaintiff also admits that he questioned the QC officers as to why there were inspecting him; and that because he considered QC Officers to be of his same rank, he questioned why they were conducting a uniform inspection on him. (Pl. Dep. at 93, 102). Olga Chatters, a co-worker, has testified that Plaintiff admitted to being very angry about the inspection. "[H]e felt that it wasn't fair, that he shouldn't be checked by them...because he was a site supervisor. He was not a subordinate under them. He felt that quality control and the site supervisors was an equal – was equal and that they shouldn't inspect each other." (Chatters Dep. at 79-80).

---

[3] Plaintiff disputes the veracity of the statements in the QC officers' memorandum. However, Plaintiff does not dispute that this memorandum was given to the individuals responsible for his demotion. Therefore, the document is not considered for the truth of its statements, but as evidence of what the decision-makers believed and as support for the legitimate business reason advanced for Robinson's demotion.

On the afternoon of June 1, 2005, Lt. Martinez contacted Plaintiff to inquiry into what had happened with the QC inspection and informed Plaintiff that the QC officers had reported that Plaintiff was rude and unprofessional. (*Id.* at ¶ 18).

C. Plaintiff's Demotion

Meneses, the same person who had promoted Robinson on April 2005, was advised that the QC team wrote up Plaintiff because they had found that he projected an unprofessional behavior toward them, that his attitude showed a lack of leadership skills, and that his conduct set a poor example of the subordinate officer who was present. (Statement of Undisputed Facts, DE 37 at ¶¶ 19, 22). Meneses determined that Plaintiff was not ready to perform a supervisory role and demoted him to the position he held a few months before, Security Officer.[4] (*Id.* at ¶ 20). According to Meneses, his determination

---

[4]

Plaintiff disputes this statement. However, Plaintiff has not offered any testimony of Meneses or any other admissible evidence that contradicts Meneses' affidavit. Instead, Plaintiff has submitted Alutiiq's Position Statement to the EEOC in which it states that Plaintiff was demoted for his failure to, among other things, cooperate with the QC officers' inspection as required by the "GCIM" manual. Plaintiff also submitted a copy of page 28 of the GCIM manual which indicates that he needed to cooperate with *FPS* personnel conducting inspections, not with Alutiiq's own personnel. This argument is meritless and does not create a genuine issue of material fact. First, Plaintiff does not dispute that QC officers attempted to conduct the inspections as part of their duties. It is also undisputed that the QC officers wrote up Plaintiff for his allegedly rude and unprofessional behavior, and that Plaintiff questioned their authority to conduct the inspection and was very angry about their presence. Finally, it is undisputed that Meneses was given the information prior to his decision to demote Plaintiff, and that he informed Plaintiff that he was being demoted for being rude and unprofessional. Even if Plaintiff is correct that the GCIM manual only required him to submit to inspections by FPS personnel, there is no evidence contradicting the sworn statements submitted by Defendant that as part of their duties, the QC officers, road supervisors and Lieutenants also conducted inspections. Additionally, Plaintiff was told he was being demoted during the one-year probation period for being rude and for lack of professionalism, which does not necessarily require a failure to follow the GCIM manual. Finally, showing that the Meneses' employment decision was wrong is not sufficient to infer discriminatory intent. *Beard v. 84 Lumber Co.*, 206 Fed. Appx. 852, 858 (11th Cir. 2006)

was based on the QC officers' report. (*Id.*). Plaintiff was told he was being demoted for being rude and unprofessional. (*Id.* at ¶ 21).

At the time of the demotion, there were no open shifts at the DEA warehouse.[5] (*Id.* at ¶ 24). Plaintiff was thus transferred to work at INS.[6] (*Id.* at ¶ 24). Although the INS position provided for fewer than 40 hours per week, Plaintiff chose to work at the INS project because he did not like night shifts.[7] (*Id.* at ¶ 25; Pl. Dep. at 117). The INS shift commenced one and one-half hour earlier than his shift at the DEA. (Statement of Undisputed Facts, DE 37 at ¶ 25). Plaintiff was advised that a later shift was opening in a few weeks, but Plaintiff never applied for that job. (*Id.*).

Following Plaintiff's demotion, his supervisory position at DEA was not filled; no

---

("A subjective reason for the employer's action can be as legitimate as any other reason, and an employee cannot substitute his business judgment for that of his employer."). Similarly, whether Plaintiff actually committed an infraction is not the issue in the case. Rather, what matters, is whether the decision maker reasonably believed Plaintiff committed the infraction which led to the demotion. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (noting that inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination).

[5] Plaintiff admits that all the shifts at DEA were covered. (*See* Pl. Dep. at 116).

[6] Plaintiff admits that Alutiiq has the right to put employees where they are needed when demoted because such decisions are based on operational needs. (*See* Pl. Dep. at 155).

[7] Plaintiff admits he did not want to work a night shift. *See* Pl. Dep. at 117. However, he seems to dispute Defendant's statement that the INS position provided fewer than 40 hours of work per week on the basis that the Meneses affidavit Defendant cites to does not contain such information. However, in its Second Amended Complaint, Plaintiff alleges that the position at INS provided approximately 35-38 hours of work per week rather than 40-hours. Moreover, since Defendant does not dispute that Plaintiff has suffered an adverse employment action as a result of his demotion and transfer, there is no genuine dispute as to a material fact that precludes summary judgment.

individual was hired or promoted to the position of Site Supervisor. (*Id.* at ¶ 30; Meneses Aff. ¶ 23; Chatters Dep. at p. 15-17). QC Officers Figueroa and Fernandez never assumed Plaintiff's position of Site Supervisor at DEA. (Meneses Aff. at ¶ 24). Part of a QC officer job is to inspect weapons and uniforms. (Statement of Undisputed Facts, DE 37 at ¶ 29). The QC officers performed this job duty both before and after Plaintiff's demotion. (*Id.*) Other supervisory personnel also periodically perform inspections covering weapons, uniforms, and other aspects of the posts. (*Id.*). These are over and above any inspections Plaintiff may have performed while supervisor at DEA. (*Id.*).

D.   Termination of Employment

In September 2005, Plaintiff voluntarily resigned from Alutiiq to work with FEMA in Louisiana. (*Id.* at ¶ 27). According to Plaintiff, he resigned to help Hurricane Katrina victims and to make more money. (*Id.* at ¶ 27). When he returned to Miami, he was rehired by Alutiiq as a temporary employee for a FEMA event in South Florida related to Hurricane Wilma. (*Id.* at ¶ 28). When Alutiiq's work on the FEMA event was over, Plaintiff sought full time reemployment with Alutiiq, but there was no work available on the FPS contract.[8] (*Id.*).

E.   Procedural History

On December 29, 2006, Robinson filed a Complaint in the Circuit Court of the

---

[8] Plaintiff adds that after Plaintiff was terminated from his FEMA work, Alutiiq continued to hire persons for FEMA work. This is immaterial. Plaintiff has not alleged that his termination from the *temporary* position in the FEMA project or Alutiiq's decision not to re-hire Plaintiff as a full time employee was discriminatory. Further, neither of these employment actions formed part of his EEOC Charge of Discrimination. (*See* Second Am. Compl., Ex. A).

Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case NO.: 06-258159-CA-10. Defendant moved to dismiss the Complaint, and Plaintiff filed a First Amended Complaint and a Second Amended Complaint on March 2, 2007. The Second Amended Complaint asserts a single cause of action for discrimination under Florida Statutes § 760.10 *et seq.* On March 3, 2007, Defendant removed the action to federal court by invoking this Court's diversity jurisdiction. (*See* Notice of Removal, DE 1). On January 9, 2008, Defendant filed the instant Motion for Summary Judgment.

## II.     **Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a

verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney,* 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255.

### III. Analysis

#### A. Race Discrimination under the Florida Civil Rights Act

The FCRA makes it unlawful for an employer to "discharge ... any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a). A claim of discrimination under the FCRA may be proved through either direct evidence, circumstantial evidence, or statistical proof.[9] *Tippie v. Spacelabs Med., Inc.*, 180 Fed. Appx. 51, 53 (11th Cir. 2006) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081

---

[9] In analyzing a discrimination claim under the FCRA, courts use the same framework as claims brought under Title VII. *See, e.g., Hampton v. City of S. Miami,* 186 Fed. Appx. 967, 970 n. 1 (11th Cir. 2006) ("Federal case law interpreting Title VII is applicable to cases arising under the FCRA."); *Florida State Univ. v. Sondel,* 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996) ("Federal case law interpreting Title VII ... is applicable to cases arising under the Florida Act.").

(11th Cir. 1990). Direct evidence is evidence which, if believed, proves the existence of a fact in issue without inference or presumption. *Id.* at 54. "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." *Id.* (citing *Bass v. Bd. of County Comm'rs, Orange County, Florida*, 256 F.3d 1095, 1105 (11th Cir. 2001)). Since Robinson has not offered any direct evidence of discrimination or statistical proof, I construe his claim as needing to be proved through circumstantial evidence.

To establish a *prima facie* case of discrimination under the McDonnell Douglas framework the plaintiff must show: (1) that he was a member of a protected class; (2) that he was qualified for the job; (3) that he suffered an adverse employment action; and, (4) that he was replaced by someone outside the protected class, or was treated less favorably than a similarly situated person outside the protected class. *Hinson v. Clinch Cty. Ga. Bd. Educ.*, 231 F.3d 821, 828 (11th Cir. 2000); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562. A crucial component in deciding if discrimination can be inferred is whether employees outside of plaintiff's protected class were treated more favorably than the demoted employee. *Quick v. Tripp, Scott, Conklin & Smith, P.A.*, 43 F. Supp. 2d 1357, 1371 (S.D. Fla. 1999).

Showing that plaintiff's duties were distributed to current employees fails to establish that the defendant replaced him. *See Moore v. Alabama State Univ.*, 864 F.2d 103, 105 (11th Cir. 1989) (stating that since plaintiff "was not replaced by anyone," there was

"nothing to show that defendants acted in any way because of plaintiff's sex."); *Lieberman v. Miami-Dade County*, Case No. 99-1714, 2000 WL 1717649, *6 (S.D. Fla. Aug. 16, 2000) ("The fact that her duties were redistributed among other current employees demonstrates that the County was not seeking to replace her."). It is not enough to show that defendant's employment decision was mistaken; rather, the plaintiff must show that the employment decision was in fact motivated by race. *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1348 (11th Cir. Fla. 2007) (citing *Brooks v. County Comm'n of Jefferson County,* 446 F.3d 1160, 1163 (11th Cir. 2006)).

To determine whether employees are similarly situated, the Court must "consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.) (quoting *Holifield*, 115 F.3d at 1562), opinion modified by 151 F.3d 1321 (11th Cir.1998)). To satisfy the similar offense prong, the "misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers reasonable decisions and confusing apples with oranges." *Silvera*, 244 F.3d at 1259 (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir.1999) (citations omitted).

The parties agree that Plaintiff is a member of a protected class (Black); that he is qualified for the position (supervisor); and, that he has suffered an adverse employment action (demotion/transfer). The sole issue as to whether Plaintiff has established a *prima facie* case turns on whether Plaintiff was replaced by someone outside the protected class, or whether similarly situated employees outside of the protected class were treated more

favorably. It is undisputed that following Plaintiff's demotion, Alutiiq did not hire or promote any individual to the position of Site Supervisor at the DEA. In fact, Plaintiff admits that no person held the title of Site Supervisor at the DEA after he was demoted. (*See* Opposition to Summary Judgment, DE 40 at p.7). Despite this admission, Plaintiff argues that Olga Chatters' testimony shows there is a dispute of fact as to whether he was "replaced" by a non-Black. However, Chatters testified as follows:

> Q: [Robinson] was the first site supervisor?
> A: Yes.
> Q: Who was the site supervisor after Tarence Robinson?
> A: No one. I can't recall. There was nobody.
>    ....
> A: I can't recall who was the site supervisor, because I said before, road supervisors came by and they were in charge. I don't remember even seeing a site supervisor after Tarence [Robinson].

(Chatters Dep. at p. 15). Thus, the very testimony Plaintiff relies on unequivocally indicates that Plaintiff was not replaced.

Plaintiff argues, however, that because Lieutenants, road supervisors and QC officers performed duties similar to those of a Site Supervisor, such as inspections, the Court should find that he was "replaced" for purposes of the FCRA. This argument fails for several reasons. First, as discussed above, the law is clear that showing that Plaintiff's duties were distributed to current employees fails to establish that the defendant was replaced. *See Lieberman,* 2000 WL 1717649, *6 ("The fact that her duties were redistributed among other current employees demonstrates that the County was not seeking to replace her."). In addition, the undisputed record evidence on summary judgment is that QC officers, Lieutenants and road supervisors were performing

13

inspections as part of their job duties before Plaintiff was demoted.[10] In fact, it was the QC officers' attempt to conduct a uniform inspection on Plaintiff that lead to Plaintiff's write up. (Pl. Dep. at 93, 102). Finally, as Chatters testified, the individuals that conducted inspections after Alutiiq was demoted included Hispanic and African-Americans. (Chatters Dep. at p. 47). Therefore, the fact that some of Plaintiff's duties overlapped with those of other Black and Hispanic officers who continued to perform these duties after Plaintiff's demotion does not establish that Plaintiff was replaced by an individual outside of his protected class.

Similarly, Plaintiff has failed to show that similarly situated employees outside of the protected class were treated more favorably. During his deposition, Plaintiff stated that "[s]ome Hispanics get treated unfairly too. It just depends...Some Hispanic people complaint and they file complaints." (*See* Pl. Dep., at pp. 225-26). He also testified that he did not have problems with Hispanic co-workers, only some Hispanic supervisors. (*Id.*). Additionally, there is no summary judgment evidence showing that any non-Black supervisor was treated more favorably. In an attempt to create a disputed issue of fact, Plaintiff argues that Figueroa, a Hispanic QC Officer, was treated more favorably because he was promoted quickly while Plaintiff was demoted. Figueroa, however, is not similarly situated: he held a different position and was not written up for insubordination. *See Silvera,* 244 F.3d at 1259 ("The most important factors in the disciplinary context ... are the

---

[10] Plaintiff states that this fact is disputed because Chatters testified that because the DEA area did not have a site supervisor following Plaintiff's demotion, additional supervision was required in that area. Chatters' testimony, even if admissible, does not dispute that other officers also performed inspections.

14

nature of the offenses committed and the nature of the punishments imposed."). Therefore, since Plaintiff has failed to meet its burden of establishing a *prima facie* case, Defendant is entitled to summary judgment as a matter of law.

    B.    <u>Whether Defendant's Advanced Non-Discriminatory, Legitimate Business Reasons is a Pretext</u>[11]

Once the plaintiff establishes a *prima facie* case of employment discrimination, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the challenged employment decision. *Mont-Ros v. City of W. Miami*, 111 F. Supp. 2d 1338, 1349 (S.D. Fla. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (U.S. 1973)). This burden of rebuttal "is merely one of production, not persuasion, and is exceedingly light." *Id.* at 1349-1350 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (U.S. 1981) and *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)). If the defendant meets this burden, plaintiff must prove that the advanced reason was a pretext; in other words, "plaintiff must establish both that the proffered reason for the employment decision was false and that the real reason for the action was discrimination." *Id.* at 1350. A plaintiff may avoid summary judgment by either persuading the court that the employer was more likely motivated by a discriminatory reason or by showing that the employer's explanation is not credible. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Where as here, the same individual who hired or promoted the plaintiff is the one who fires or demotes him, there is an inference that the decision was not

---

[11] Having concluded that Plaintiff has failed to establish a *prima facie* case under the FCRA, Defendant is entitled to summary judgment and review of its advanced legitimate business reason is not necessary. Nonetheless, for purposes of completion, I will address whether Plaintiff has shown that Defendant's business reason is pretextual.

motivated by discriminatory animus. *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998). However, where the plaintiff has established a *prima facie* case and has put forth evidence of pretext, the "same actor" inference does not warrant the entry of summary judgment. *Id.* at 1443, n. 4.

Here, even if Plaintiff could establish a *prima facie* case, Defendant is nonetheless entitled to summary judgment because it has advanced a legitimate business reason for the demotion (i.e. the QC Officers' write up), and Plaintiff has failed to produce even a shred of summary judgment evidence to demonstrate that this reason is pretextual. Plaintiff conclusory alleges, without an explanation, that a memorandum dated June 3, 2005 from Lt. Lunette Russelle to Capt. Villareal, with copies to Paul Sefcik, Nelson Meneses, Oscar Perez, and the File, indicates that Capt. Villareal was the decision-maker, and that the decision was unreasonable. (*See* Opposition to Summary Judgment, DE 40 at Ex. 8). First, the undisputed record evidence is that Meneses was the decision-maker; Plaintiff's conclusory statement without any evidentiary support that Capt. Villareal was the decision-maker simply because the memorandum was addressed to him and merely copied to Meneses does not create a genuine dispute of fact. Moreover, the fact that Lt. Russelle praised Plaintiff's past performance does not establish that the decision was unreasonable. Defendant does not argue that Plaintiff was not qualified for the position. In fact, it was Plaintiff's past performance that lead to his promotion. More importantly, the issue is not whether the employment decision was "correct" or "reasonable", but rather whether it was motived by discriminatory intent.

Additionally, this is a case in which the person who promoted Robinson is the same individual who demoted him. Therefore, there is an inference that Meneses did not act

with discriminatory animus. Since Plaintiff has not established a *prima facie* case and has not put forth evidence of pretext, the inference has not been rebutted. *But cf. Vitro Servs. Corp.*, 144 at 1443, n. 4 ("[E]vidence of pretext, when added to a prima facie case, is sufficient to create a genuine issue of material fact that precludes summary judgment."). Because Plaintiff failed to show that Defendant's advanced reason for its employment action is pretextual, the motion for summary judgment must be granted.

## IV. Conclusion

Being fully advised and having considered the pertinent portions of the record and applicable law, it is hereby **ORDERED and ADJUDGED**:

1. Defendant's Motion for Summary Judgment as to the sole count of the Complaint [DE 36] is GRANTED.
2. All pending motions are DENIED AS MOOT.
3. All hearing dates are CANCELLED, including the April 25, 2008 oral argument on the Motion to Dismiss.
4. The Clerk of Court is instructed to CLOSE this case.

DONE AND ORDERED, in Chambers, at Miami, Florida, this _22_ day of April, 2008.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
United States Magistrate Judge Chris McAliley
All Counsel of Record